**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

CELINE SA,

                Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

                Defendants.

Case No. 1:24-cv-06208

## COMPLAINT

Plaintiff Celine SA ("Celine") brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A filed herewith (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through e-commerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and,

2

on information and belief, have sold products using infringing and counterfeit versions of Celine's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Celine substantial injury in the State of Illinois.

## II. INTRODUCTION

3.    Celine files this action to combat e-commerce store operators who trade upon Celine's reputation and goodwill by selling unauthorized and unlicensed products, including handbags, purses, and other fashion accessories, using infringing and counterfeit versions of Celine's federally registered trademarks (the "Counterfeit Celine Products"). Defendants operate e-commerce stores one or more Seller Aliases that advertise, offer for sale and sell Counterfeit Celine Products to unknowing consumers.

4.    E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and giving rise to the inference that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under multiple Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation. Celine is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Celine Products over the Internet. Celine has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

5.      Celine is organized and existing under the laws of France with its principal place of business in Paris, France.

6.      Celine is a luxury French fashion House founded in 1945 by Ms. Céline Vipiana.

7.      Celine is a world-famous luxury brand engaged in the business of styling and selling a diverse portfolio of ready-to-wear men's and women's apparel, fashion accessories, and leather goods (collectively, the "Celine Products"). In 1996, Celine became part of the Louis Vuitton Moet Hennessy (LVMH) group.

8.      Celine Products have become enormously popular and even iconic, driven by Celine's arduous quality standards and innovative designs. Among the purchasing public, genuine Celine Products are instantly recognizable. In the United States and around the world, the Celine brand has come to symbolize high quality, and Celine Products are among the most recognizable of their kind in the world.

9.      The luxury French fashion house is currently under the creative direction of Hedi Slimane. The renown designer joined Celine in February 2018, as its artistic, creative and image director, making his debut by expanding the brand's offering to menswear, couture, and fragrance collections.

10.      Celine Products are distributed and sold to customers through retailers throughout the United States, including in company-operated boutiques and through a selective network, including high-quality department stores in Illinois such as Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

11.      In December 2018, Celine launched its e-commerce website in France, soon followed by Germany, the UK, Spain, Italy and the United States.

12.     Celine incorporates a variety of distinctive marks in the design of Celine Products. As a result of their long-standing use, Celine owns common law trademark rights in its trademarks. Celine has also registered its trademarks with the United States Patent and Trademark Office. Celine Products typically include at least one of Celine's registered trademarks. Often several Celine marks are displayed on a single product. Celine uses its trademarks in connection with the marketing of its Celine Products, including the following marks which are collectively referred to as the "Celine Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 982,010 | CELINE | April 9, 1974 | For: pullover type sweaters, shirts, blouses, boots, shoes, and slippers in class 25. |
| 1,000,156 | CÉLINE | December 24, 1974 | For: leather goods- namely, purses, pouches, money bags and cardholders, wallets, passport and travel document cases, handbags in class 18. |
| 1,744,898 | CELINE | January 5, 1993 | For: retail clothing and accessories boutique services in class 42. |
| 1,772,927 | CELINE | May 25, 1993 | For: costume jewelry in class 14. For: clothing; namely, sweaters, blouses, T- shirts, shorts, sweatshirts, lingerie, men's and ladies' suits, trousers, dresses, jackets, skirts, scarves, neckties, belts, boots, shoes, and parkas in class 25. |
| 2,475,129 | CELINE | August 7, 2001 | For: spectacles, spectacles cases, eyeglasses, and sunglasses in class 9. |

5

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,919,067 |  | February 15, 2011 | For: clothing, namely, overcoats, pullovers, jackets in class 25. |
| 4,879,264 |  | January 5, 2016 | For: handbags, in class 18. |
| 5,959,186 |  | January 14, 2020 | For: leather and imitations of leather; travel bags, leather luggage travelling sets, travelling trunks and travelling bags, unfitted vanity cases, rucksacks, shoulder bags, handbags, attaché cases, document cases and briefcases of leather, pouches of leather, pouches of textile, pouches for holding keys, wallets, key cases, business card cases, calling card cases, and credit card cases; umbrellas in class 18. For: clothing and underwear, namely, shirts, T-shirts, lingerie, belts, headscarves, neckties, shawls, waistcoats, skirts, waterproof clothing in the nature of waterproof jackets and raincoats, overcoats, trousers, jeans, pullovers, dresses, jackets, scarves, gloves, tights, socks, swimsuits, bathrobes, pajamas, nightgowns, shorts, pocket handkerchiefs in the nature of |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | pocket squares; shoes, boots, slippers; headwear in class 25. |
| 6,187,133 |  | November 3, 2020 | For: Non-medicated soaps; perfumery, toilet water, eau de Cologne; perfumes; extracts of flowers being perfumes; plant extracts sold as components of cosmetics; incense; after-shave preparations; essential oils; oils for cosmetic use; cosmetics; cosmetic products, namely, foundations, lipsticks, lip gloss, eye shadows, mascaras, eyebrow pencils, eye shadows; hair, face and body powders, creams, sprays and lotions for cosmetic use; cleansing milk for toilet purposes; make-up removing preparations; deodorants for personal use; lip and body balms other than for medical use; bath and shower gels and bath and shower cosmetic preparations; beauty masks; hair shampoos and conditioners; non-medicated toiletry preparations; make-up; products for nail care and embellishment, namely, nail polish; massage candles for cosmetic use in class 3. For: Combustible wax for candles; fuels and lighting fuel; candles and wicks for lighting; wicks for candles; candles for nightlights; perfumed candles; oils and fats for preservation of leather in class 4. |

7

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | For: Common metals and their alloys; ring shaped fittings of metal; chains of metal; rivets of metal; ironmongery and small items of metal hardware, namely, bag hangers of metal, metal rings, namely, ring shaped fittings of metal, boxes of common metal, bolts of metal, padlocks, chains of metal, stays of metal, namely, metal fence stays, pegs of metal, keys of metal, namely, metal keys for locks, nails, cramps of metal, hooks, nuts of metal, signboards of metal, labels of metal, box fasteners of metal, locks of metal for bags, house numbers and letters of common metal, except type, bindings of metal, namely, metal binding bands, latches of metal, handcuffs, clips of metal for sealing bags, nameplates of common metal, springs, rivets of metal, locks of metal, wire cloth, and screws of metal; buckles of common metal; metallic bag hooks; knobs of metal; boxes of common metal; chests of metal; metal industrial packaging containers; monuments of non-precious metal; works of art of common metal; statues and figurines made from common metal in class 6. For: Smart watches, connected bracelets, namely, wearable activity trackers; smart rings; stands, bags, satchels, carriers, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | covers and cases all specially adapted for holding photographic apparatus, video cameras, tablet computers, computers, laptops, portable phones, smart phones; digital photograph frame; blank USB flash drives; electronic publications downloadable online or from the Internet in the nature of magazines in the fields of fashion, fashion show, jewelry, clothes, bags, shoes, and perfumes; wrist straps, neck straps and fitted plastic films known as skins for covering and providing a scratch proof barrier or protection for portable phones; telecommunications apparatus in the nature of wireless receivers in the form of jewelry; optical goods, namely, spectacles, sunglasses, goggles for sports; smart glasses; spectacle frames; spectacle lenses, contact lenses; spectacle cords and chains; cases for spectacles or for contact lenses; binoculars; decorative magnets; ring holders, namely, holders specially adapted for holding smart rings in class 9.<br><br>For: Jewelry; rings being jewelry; medals; clocks; wristwatches; watches; watch cases; watch bands; watch chains; cases for watches; clasps for jewelry; key rings; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | wristwatch buckles and earrings; cuff links, bracelets, jewelry charms, charms for key rings, brooches, necklaces, chains being jewelry, tie pins, ornaments of precious metal in the nature of jewelry, lockets; jewelry boxes and jewelry cases made from precious metals, their alloys or coated therewith; badges of precious metal; unwrought or semi-wrought precious metals; works of art of precious metal; precious stones in class 14.

For: Leather and imitations of leather; unworked or semi-worked leather; imitation leather; furs being animal skins; fur-skins, namely, semi worked fur; traveling bags, leather traveling bag sets, trunks being luggage, traveling trunks and suitcases, garment bags for travel purposes, boxes intended for toiletry articles, namely, unfitted vanity cases, leather or leather board boxes; bags, namely, rucksacks, shoulder bags, handbags, sports bags, briefcases, document cases, briefcases and business cases made from leather; luggage tags for luggage, whips, animal leashes, saddlery; walking sticks; leather pouches, wallets, business card cases; credit card holders, namely, wallets; purses, key cases, credit card cases; umbrellas; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | parasols; beach umbrellas in class 18.<br><br>For: Clothing, namely, underwear, shirts, sweaters, t-shirts, lingerie, belts, scarves, neckties, shawls, vests, jerseys, skirts, raincoats, coats, overcoats, suspenders, trousers, denim trousers, pullovers, dresses, jackets, sashes, gloves, tights, socks, bathing suits, bath robes, pajamas, nightgowns, shorts, pocket squares; shoes, fitted metal heel protectors for shoes; boots, half-boots; soles for footwear; slippers; headwear; cuffs; clothing and footwear for sports and skiing, namely, trousers, knitwear, namely, knitted shirts and sweaters, and hosiery, underwear, skirts, trousers, jackets, coats, shirts, gloves, waterproof clothing, namely, waterproof jackets and pants, anoraks, snow suits, hats, caps, socks, panty hose, footwear, boots, sports shoes, and ski boots in class 25.<br><br>For: Retail stores and online retail stores in the fields of perfumery and cosmetics, clothing, footwear, headgear, leather goods, optical goods, jewelry, watches, and luggage; providing television home shopping services in the fields of perfumery and cosmetics, clothing, footwear, headgear, optical goods, leather goods, jewelry, watches, and luggage; |

11

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | gift registry services in class 35. |
| 6,337,314 |  | May 4, 2021 | For: surveying instruments, photographic cameras, cinematographic cameras, weighing apparatus and instruments, distance measuring apparatus, signaling buoys, directional compasses; apparatus for recording, transmission, reproduction of sound or images; helmets for virtual reality, smartwatches, connected bracelets being wearable computer peripherals for users to connect wirelessly to computers; smart rings; blank magnetic data carriers, blank audio disks; stands for smartphones, computer bags, blank magnetic data carriers, smartphone covers, cases for photographic apparatus, video cameras, tablet computers, computers, laptops, portable phones, smart phones; blank compact disks, DVDs and other digital storage media; electronic book reader; data processing equipment, computers and computer peripheral equipment; mouse pads; headphone; loudspeakers; digital photo frames; blank USB flash drives; electronic agendas; downloadable electronic game software; telephones; mobile telephones; computers; portable computers; tablet computers; personal digital |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | assistants (PDA); MP3 players; batteries; battery chargers; earphones; telecommunication apparatus in the nature of wireless receivers in the form of jewelry; optical goods, namely, spectacles, sunglasses, goggles for sports; smart glasses; spectacle frames; spectacle lenses, contact lenses; spectacle cords and chains; cases for spectacles or for contact lenses; binoculars; decorative magnets; ring holders for mobile phones in class 9.<br><br>For: Leather and imitations of leather; unworked or semi-worked leather; imitation leather; fur pelts; fur being animal skins; traveling bags, leather traveling bag sets, travel chests being luggage, trunks being luggage and suitcases, garment bags for travel, boxes of leather or leather board; leather bags, rucksacks, shoulder bags, handbags, sports bags, carrying cases, attaché cases, document cases and business cases of leather; luggage tags for luggage, whips, animal leashes, saddlery; walking sticks; clutch bags, wallets, business card cases; credit card holders; purses, key cases, credit card cases; umbrellas; parasols; beach umbrellas in class 18. |

13. The Celine Trademarks have been used exclusively and continuously in the U.S. by Celine and have never been abandoned. The above U.S. registrations for the Celine Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as Exhibit 1 are true and correct copies of the U.S. Registration Certificates for the Celine Trademarks included in the above table. The registrations for the Celine Trademarks constitute prima facie evidence of their validity and of Celine's exclusive right to use the Celine Trademarks pursuant to 15 U.S.C. § 1057(b).

14. The Celine Trademarks are exclusive to Celine and are displayed extensively on Celine Products and in Celine's marketing and promotional materials. Celine Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Celine has expended millions of dollars annually in advertising, promoting, and marketing featuring the Celine Trademarks. Because of these and other factors, the Celine name and the Celine Trademarks have become famous throughout the United States.

15. The Celine Trademarks are distinctive when applied to Celine Products, signifying to the purchaser that the products come from Celine and are manufactured to Celine's quality standards. Whether Celine manufactures the products itself or licenses others to do so, Celine has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Celine Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Celine Trademarks is of incalculable and inestimable value to Celine.

16. Celine operates an e-commerce website where it promotes Celine Products at Celine.com. Celine Products are featured and described on the website and are available for

14

purchase. The Celine.com website features proprietary content, images, and designs exclusive to Celine.

17.     Celine has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Celine Trademarks. As a result, products bearing the Celine Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Celine. Celine is a multi-million-dollar business, and Celine Products have become among the most popular of their kind in the world.

18.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Celine. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Celine to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Celine intends to take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the Celine brand has resulted in its significant counterfeiting. Consequently, Celine has a worldwide anti-counterfeiting program and regularly investigates

suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Celine has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were targeting and/or offering for sale Counterfeit Celine Products to consumers in this District and throughout the United States.

21.     According to U.S. Customs and Border Protection ("CBP"), in fiscal year 2021 "CBP made over 27,000 seizures . . . with an estimated manufacturer's suggested retail price (MSRP) of over $3.3 billion, which represents an increase of 152% over the previous Fiscal Year, when goods valued at $1.3 billion MSRP were seized for IPR [Intellectual Property Rights] violations." (*See* Exhibit 2, Fiscal Year 2021 Intellectual Property Rights Seizure Statistics Report, at 5.) In FY 2021, over 24,000 of the IPR seizures (about 89 percent of the total) were shipped via mail or express services (as opposed to cargo or other means). (*Id.* at 37.) Over 50 percent of the IPR seizures (with an MSRP of over $2.5 billion) originated from China and Hong Kong. (*Id.* at 35.)

22.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." (*See* Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, at p. 25 (2020).)

23.     In its report on "Combating Trafficking in Counterfeit and Pirated Goods," the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. (Exhibit 4 hereto at 11, 35 (Jan. 24, 2020).) The report also notes that counterfeit

products account for billions in economic losses, resulting in millions of lost jobs for legitimate businesses. (*Id.* at 18-19.)

24.     Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store fronts.  (*Id.* at 22.)  Since platforms generally do not require a seller to identify its underlying business entity, counterfeiters can have many different profiles that appear unrelated even though they are commonly owned and operated.  (*Id*. at 39.)  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." (Chow, Ex. 3 at 25.)

25.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Celine Products to residents of Illinois.

26.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal, among other methods. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Celine has not licensed or authorized Defendants to use any of the Celine Trademarks, and none of the Defendants are authorized retailers of genuine Celine Products.

27.     Many Defendants also deceive unknowing consumers by using the Celine Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract search engines crawling the Internet looking for websites relevant to consumer searches for Celine Products. Other e-commerce stores operating under Seller Aliases omit using the Celine Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Celine Products.

28.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Celine Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

30.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar or misspellings, and/or the use of

the same text and images. Additionally, Counterfeit Celine Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Celine Products were manufactured by and come from a common source and that Defendants are interrelated.

31.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Celine's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Celine.

33.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to manufacture, import, distribute, offer for sale, and sell Counterfeit Celine Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from Celine, have jointly and severally, knowingly and willfully used and continue to use the Celine Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Celine Products into the United States and Illinois over the Internet.

34.     Defendants' unauthorized use of the Celine Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Celine Products, including the sale of Counterfeit Celine Products into the United States, including Illinois, is likely to cause and

19

has caused confusion, mistake, and deception by and among consumers and is irreparably harming Celine.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

35.     Celine hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Celine Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Celine Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Celine Products offered, sold, or marketed under the Celine Trademarks.

37.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Celine Trademarks without Celine's permission.

38.     Celine is the exclusive owner of the Celine Trademarks. Celine's United States Registrations for the Celine Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Celine's rights in the Celine Trademarks and are willfully infringing and intentionally using counterfeits of the Celine Trademarks. Defendants' willful, intentional, and unauthorized use of the Celine Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Celine Products among the general public.

39.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Celine has no adequate remedy at law, and if Defendants' actions are not enjoined, Celine will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Celine Trademarks.

41.     The injuries and damages sustained by Celine have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Celine Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

42.     Celine hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Celine Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Celine or the origin, sponsorship, or approval of Defendants' Counterfeit Celine Products by Celine.

44.     By using the Celine Trademarks on the Counterfeit Celine Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Celine Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Celine Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Celine has no adequate remedy at law and, if Defendants' actions are not enjoined, Celine will continue to suffer irreparable harm to its reputation and the goodwill of its Celine brand.

## PRAYER FOR RELIEF

WHEREFORE, Celine prays for judgment against Defendants as follows:

(l)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     Using the Celine Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Celine Product or is not authorized by Celine to be sold in connection with the Celine Trademarks;

b.     Passing off, inducing, or enabling others to sell or pass off any product as a genuine Celine Product that is not Celine's or not produced under the authorization, control, or supervision of Celine and approved by Celine for sale under the Celine Trademarks;

c.     Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Celine Products are those sold under the authorization, control or supervision of Celine, or are sponsored by, approved by, or otherwise connected with Celine;

d.     Further infringing the Celine Trademarks and damaging Celine's goodwill; and

e. Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Celine, nor authorized by Celine to be sold or offered for sale, and which bear any of Celine's trademarks, including the Celine Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

(2) For entry of an Order that, upon Celine's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Celine Trademarks;

(3) That Defendants account for and pay to Celine all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Celine Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

(4) In the alternative, that Celine be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Celine Trademarks;

(5) That Celine be awarded its reasonable attorneys' fees and costs; and

(6) That awards Celine any and all other relief that this Court deems just and proper.

Dated July 23, 2024.                         Respectfully submitted,


                                             /s/ John Haarlow, Jr.

                                             *Counsel for Plaintiff Celine SA*
                                             John Haarlow, Jr. (ARDC #6283018)
                                             MERCER OAK LLC
                                             29 North Ada Street
                                             Chicago, IL  60607
                                             (872) 248-0601
                                             john@merceroaklaw.com