IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Celine S.A. | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 C 6208 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| THE PARTNERSHIPS and | ) | |
| UNICORPORATE ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A" | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

On November 14, 2024, this court entered a final judgment order against a group of approximately 60 defaulting defendants, including defendant Butaby. (Doc. 42). Seven weeks later, Butaby filed a motion to vacate the default judgment against it under Fed. R. Civ. P. 55(c) and 60(b). (Doc. 44). Butaby also filed a motion to modify the preliminary injunction that this court entered against Butaby and the other defaulting defendants on October 8, 2024. (Docs. 34, 47). In that same motion (Doc. 47), Butaby requested leave to file supplemental documentary evidence under seal. This memorandum opinion and order will address both motions. For the reasons stated below, the court grants Butaby's motion to vacate the default judgment against it. (Doc. 44). Butaby's motion for miscellaneous relief (Doc. 47) is granted. The court vacates the preliminary injunction against Butaby and grants its motion to file supplemental documentary

1

evidence under seal.

## **BACKGROUND**

Plaintiff Celine SA is a French luxury brand that sells a diverse portfolio of men's and women's apparel, fashion accessories, and leather goods. Plaintiff incorporates a variety of registered trademarks in connection with its marketing of its products.

Plaintiff originally filed a two-count complaint against 62 online seller defendants. Count I alleges trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114. Count II alleges false designation of origin in violation of 15 U.S.C. § 1125 (a). Essentially, plaintiff alleges that the online seller defendants sell counterfeit goods bearing plaintiff's trademarks.

Plaintiff moved for a temporary restraining order, which this court granted on September 10, 2024. Plaintiff then moved to convert that temporary restraining order into a preliminary injunction. This court granted that motion on October 8, 2024. According to the summons returned executed by plaintiff, plaintiff served all 62 online seller defendants by email on September 30, 2024. This email "attached the Summons, Complaint, and TRO and by publishing those documents on a website linked in the email." According to plaintiff, it also served defendants with its motion for preliminary injunction and motion for default judgment, ostensibly by the same means.

Butaby is one of the 62 online seller defendants identified in the complaint. Plaintiff alleges that Butaby sells counterfeit sunglasses bearing plaintiff's registered trademarks. Butaby

denies any use of plaintiff's registered trademarks.

## **LEGAL STANDARD**

According to Fed. R. Civ. P. 55 (c): "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  A district court enjoys "great latitude in making a Rule 60(b) decision because that decision 'is discretion piled on discretion.'"  Bakery Machinery & Fabrication Inc., v. Traditional Baking, Inc., 570 F.3d 845, 848 (7th Cir. 2009) (quoting Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996)).  Generally, "relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances."  Reinsurance Company of America, Inc. v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1277 (7th Cir.1990).

## **DISCUSSION**

### **A.  Article 15 of the Hague Convention**

Butaby argues that the default judgment was void under Article 15 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention").  20 U.S.T. 361.  According to Butaby, its address was known or at least possible to obtain with reasonable diligence.  Therefore, the Hague Convention applies to it.  See Peanuts Worldwide LLC v. Partnerships and Unincorporated Associations Identified on Schedule "A", 347 F.R.D. 316, 327-28 (N.D. Ill. 2024) (explaining that if a foreign defendant has at least one known address, then the Hague Convention applies).

Butaby argues that the Hague Convention renders the default judgment against it void for two reasons.  First, Butaby argues that e-mail service is not provided for in the Convention.

3

Second, Butaby argues that under Article 15(b), a default judgment cannot be issued until six months after the transmission of the service document. In this case, plaintiff states that email service was sent on September 30, 2024, meaning that a default judgment could not be entered in accord with Article 15(b) until March 30, 2025. As mentioned above, default judgment was entered on November 14, 2024.

Plaintiff responds that service by email is not prohibited by the Hague Convention or otherwise. Plaintiff argues that courts in this district, and in the majority of others, have repeatedly upheld the validity of e-mail service, especially in the cases of foreign defendants engaged in online commercial activity. Plaintiff argues that Butaby was clearly aware that its accounts were frozen and points to Butaby's admission that it attempted to resolve the matter with plaintiff within two weeks following entry of the default judgment. Plaintiff generally characterizes Butaby's arguments about the specifications of the Article 15 of the Hague convention as a "meritless eleventh-hour plea." Plaintiff does not contest that Butaby's address was known or knowable, nor does plaintiff provide a substantive response to Butaby's argument raising the six-month provision of Article 15(b).

On the issue of whether email service is proper, the court agrees with plaintiff. As this court held in Ouyenic Ltd. V. Alucy, No. 20 C 2490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021), "courts have routinely upheld service by email in situations similar to the instant case." Here, the court authorized email service under Rule 4(f)(3) on September 10, 2024 (Doc. 23). Despite Butaby's invitation for this court to revisit its position on the issue, it declines to do so.

On the issue of whether the default judgment order complied with the Article 15(b) of the Hague Convention, the court agrees with Butaby. Plaintiff offered no substantive response to

this argument.  Article 15 limits "the circumstances in which a default judgment may be entered against a defendant who had to be served abroad and did not appear."  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988).  The relevant text of Article 15 is quoted below:

> Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled -
>
> a)  the document was transmitted by one of the methods provided for in this Convention,
> b)  a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
> c)  no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.  20 U.S.T 361, Art. 15

Six months had not elapsed since the transmission of service at the time that the default judgment was entered.  Under the terms of Article 15, all three conditions must be met before this court is permitted to enter a default judgment against Butaby.  See Zhang v. Baidu.com, Inc., 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013) (describing the three conditions in Article 15 as "mandatory").  See also, Koch Minerals Sàrl v. Bolivarian Republic of Venezuela, 514 F. Supp. 3d 20, 35 (D.D.C. 2020) (describing Article 15 conditions as "the requirements for the specific exception which provides that a court may enter judgment against a defaulting party even if no certificate of service or delivery has been received"); Smart Study Co., Ltd. V. Acuteye-Us, 620 F. Supp. 3d 1382, 1400 (S.D.N.Y. 2022) (explaining that "[e]ven if the Court had determined that service by email was permissible under the Hague Convention, it would still not be permitted to enter default judgment" because Article 15 "permits a judge to enter default judgment in a plaintiff's favor only if" the three conditions are met).  Consequently, the default

5

judgment as to Butaby is vacated because it was void under Article 15 of the Hague Convention.[1]

## B. Rule 60(b) and Article 16 of the Hague Convention

Butaby moves to vacate the default judgment under both Fed R. Civ. P 60(b)(1) and Article 16 of the Hague Convention. To show that it is appropriate to vacate a judgment under Rule 60(b)(1), a party must show: "(1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." Under Article 16, a court has "the power to relieve the defendant from the effects" of a default judgment if:

> a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

> b) the defendant has disclosed a prima facie defence to the action on the merits. 20 U.S.T 361, Art. 16.

Butaby claims that it "was never served with process."[2] The lack of service, Butaby argues, fulfills the "good cause" element of the Rule 60(b)(1) test and, alternatively, element (a) of Article 16. Butaby claims that it acted quickly to correct the default, first by engaging plaintiff's counsel to seek settlement and then by filing this motion when those negotiations broke down.

Plaintiff responds that Butaby's claim that it never received process is uncorroborated and does not constitute good cause that warrants relief form default judgment. Plaintiff contends

---

[1] Although the court finds that failure to comply with Article 15 is, by itself, sufficient to vacate the judgment against Butaby, the court will also address whether this defendant must also satisfy Fed R. Civ. P. 60, as discussed below.

[2] It is not completely clear from the record how Butaby learned of this case. The record reflects that Butaby's counsel entered an appearance 11 days after default judgment was entered.

that it served defendants with its motion for a TRO, motion for a preliminary injunction, and motion for a default judgment pursuant to this court's September 10, 2024, order authorizing electronic service. (Doc. 24). Plaintiff further contends that the seven weeks that it took Butaby to file its motion does not constitute prompt action to correct the default.

As an initial matter, the court finds that Article 16 is inapplicable to these circumstances because the default judgment was not validly issued under the Hague Convention to begin with. Article 16 contemplates vacating a default judgment granted under the conditions outlined in Article 15, which directly precedes it. As discussed above, the default judgment issued here did not conform to Article 15, because it was entered before six months had elapsed after the transmission of the service document. Consequently, the court need not evaluate Butaby's claim for relief under the standard in Article 16 because it has already determined that the default judgement is void under Article 15 of the Hague Convention. See generally, Burda Media, Inc. v. Viertel, 417 F.3d 292, 302 (2d Cir. 2005) (explaining that "a plaintiff should comply with Art. 15 before seeking a default judgment. Doing otherwise runs the risk that a default judgment will be vacated under Art. 15.").

This court now faces the question of whether the voidness of the default judgment under Article 15 of the Hague Convention alone is sufficient to vacate the default judgment against Butaby. The implication of the Second Circuit's holding in Burda is that failure to comply with Article 15 alone is sufficient to vacate a default judgment. See id. Additionally, as discussed in Section A above, courts across the country have held that the conditions of Article 15 are mandatory, which carries the implication that noncompliance with those conditions would render a default judgment void. See, e.g., See Zhang v. Baidu.com, Inc., 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013); Koch Minerals Sàrl v. Bolivarian Republic of Venezuela, 514 F. Supp. 3d 20,

7

35 (D.D.C. 2020); <u>Smart Study Co., Ltd. V. Acuteye-Us</u>, 620 F. Supp. 3d 1382, 1400 (S.D.N.Y.

2022); <u>Lonati, S.p.A. v. Soxtnet, Inc.</u>, No. CV 20-5539, 2021 WL 9839476, at *2 (C.D. Cal. Sep.

20, 2021) (collecting cases).

On the other hand, faced with a similar question, a court in the Southern District of New

York held that a defendant seeking to vacate a default judgment must satisfy <u>both</u> the Hague

Convention and the Federal Rules of Civil Procedure. <u>Gould Entertainment Corp. v. Bodo</u>, 107

F.R.D. 308, 310 n.1 (S.D.N.Y 1985) (stating that "Article 15 of the Hague Convention must be

read in conjunction with Rule 60 of the Federal Rules of Civil Procedure. Article 15 sets forth

the minimum showing that must be made. Although Article 15 gives the court the 'power' to

relieve a defendant from a default judgment if, inter alia, defendant discloses a prima facie

defense, a defendant in federal court must further establish that relief is warranted under Rule

60").[3]

The <u>Gould</u> holding appears to be a narrow minority view. But the precise question of

whether a defendant must satisfy the terms of the Hague Convention or the terms of both the

Hague Convention and Rule 60 to obtain relief from a default judgment has not been squarely

presented to many courts. Thus, out of abundance of caution, the court will also evaluate

Butaby's motion under Rule 60(b), which states the circumstances under which "the court may

relieve a party" from a default judgment. Fed. R. Civ. P. 60(b).

Because the circumstances motivating the court to vacate the default judgement as to

Butaby are atypical, the court proceeds under Rule 60(b)(6), which empowers a court to relieve a

---

[3] Although this statement references "Article 15," the court understands that to be a typographical error, because Article 16 empowers courts to relieve defendants from default judgments, while Article 15 establishes the conditions necessary to enter a default judgment.

party from a default judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60 (b)(6); Cf. Gonzales v. Crosby, 545 U.S. 524, 535 (2005) (explaining that "our cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment").

The record of service in this case is convoluted. Plaintiff contends that it served defendants pursuant to this court's September 10, 2024, order which, among other things, authorized electronic service. This electronic service was to consist of "publishing a link to the Complaint, this Order and other relevant documents on a website, and by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Nicolas Lambert (and attached hereto) and any e-mail addresses provided for Defendants by third parties that includes a link to said website."[4] But Exhibit 2 to the Declaration of Nicolas Lambert does not consist of a list of email addresses. Nor does the list of defendants in Schedule "A" contain email addresses associated with the listed defendants.

The summons returned executed states that "Celine emailed a copy of the Complaint, Summons, and other papers and a link to a website containing the same to the email addresses provided by third party service providers pursuant to Court order." But the docket contains no record identifying which email addresses were provided by third party service providers. Consequently, the court cannot determine if plaintiff ever attempted to serve Butaby, because there is no record indicating which defendants plaintiff acquired email addresses for.

The court, therefore, cannot determine whether Butaby received service. That lack of a

---

[4] Nicholas Lambert is "LVMH's Head of Online Brand Protection" and is "responsible, in part, for Celine's trademark and anti-counterfeiting efforts in connection with internet related matters."

record of service, in combination with three other reasons, constitute extraordinary circumstances that justify relief. First, as discussed above, Butaby is correct that under Article 15 of the Hague Convention, a default judgment cannot be issued until six months after the transmission of the service document. Second, Butaby has demonstrated a prima facie defense on the merits. Third, the court has reason to doubt the accuracy of plaintiff's filings obtaining the default judgment and opposing its vacatur.

The court finds that Butaby has demonstrated a prima facie defense on the merits. Much of the evidence offered by plaintiff undermines its claim that Butaby infringed on its trademark. In support of the TRO and preliminary injunction that this court granted, plaintiff offered an exhibit featuring an Amazon product page for allegedly counterfeit sunglasses sold by Butaby. In its briefing on this motion, referencing the same exhibit, plaintiff maintains that Butaby's "willful counterfeiting and trademark infringement does not end with the sale of counterfeit sunglasses on Amazon in the United States." But Butaby's Amazon page in plaintiff's exhibit shows no evidence of plaintiff's trademark anywhere on the product or on the page. Additionally, images from Amazon reviews for the same product provided by Butaby show purchasers unboxing and donning sunglasses bearing no trademarks. The same is true of the few images in the reviews shown in plaintiff's own exhibit.

Plaintiff's next piece of evidence is "a listing on the Latin American platform Mercado Libre for sunglasses clearly displaying the Celine trademark and sold by Butaby." But there is no indication from the Mercado Libre page that this product is sold by Butaby. The page says the product is sold by an entity called "USMSGLOBAL-COR," and it is listed for over ten times the price of Butaby's product. Plaintiff offers no evidence to connect Butaby to USMSGLOBAL-COR. Additionally, the court finds it troubling that, contrary to plaintiff's

explicit representations to the court, the sunglasses do not display the Celine trademark. Like the Amazon web page, plaintiff's trademark is not on the product or anywhere to be seen.

Plaintiff adds to its evidence a listing on Amazon's Saudi Arabia platform and a page on a website called LTK, a social media platform focused on fashion. Like the American Amazon listing, the Saudi Arabian listing does not show defendant's trademark. The webpage on LTK is generated by a user, "HelloNikkiG." HelloNikkiG's page consists of hundreds of posts where she recommends products to her followers. One of her recommendations is the Butaby sunglasses, which she describes as "Celine Dupe frames." A purchaser's or social media user's description of Butaby's sunglasses as "Celine Dupe frames" is not evidence of counterfeiting by Butaby. And again, the images of the Butaby glasses on HelloNikkiG's page do not bear plaintiff's trademark.

Plaintiff's strongest evidence supporting its counterfeiting claim is an exhibit submitted with the Declaration of Philip G. Groves.[5] This exhibit shows the purchase and receipt of a set of two pairs of sunglasses that plaintiff's representative purchased from Butaby's Amazon store on June 27, 2024. Groves Decl. Exhibits 1 & 2. The exhibit contains a screenshot of the product on Butaby's Amazon page (which, again, does not feature plaintiff's trademarks), a screenshot of the Amazon checkout page, and images of sunglasses and the packaging they arrived in. Indeed, the images show a Butaby branded bag and a plastic sleeve bearing a barcode labeled with Butaby's name. The sunglasses in the exhibit clearly display defendant's trademarks on both

---

[5] Mr. Groves describes himself as the president of something called "DAC management LLC," and he is "in charge of monitoring internet-based infringement and counterfeiting of the Celine trademarks through internet stores to sell counterfeit Celine products from foreign countries such as China to consumers in the U.S. and elsewhere." The accuracy of Groves' conclusions in his declaration are as suspect as plaintiff's other evidence as described herein.

temples.

But a few things strike the court as strange about these images, rendering this evidence more confounding than clarifying. First, the pronounced logos on the temples contrast with every listed image on the Amazon webpage and every verified user uploaded image in the Amazon reviews. Second, besides the presence of the logo, the sunglasses pictured in the exhibit do not fit the product description in other ways. The checkout page and product description show that plaintiff's representative purchased two pairs of sunglasses, one with grey lenses and one with brown lenses. The text appearing under the barcode of the internal packaging which is shown in one of the images in the exhibit indicates the same. But neither pair of sunglasses pictured in the exhibit have brown lenses. Additionally, the temple tips in the product description, image, and user review images on Amazon are black. Both pairs of sunglasses pictured in the Groves exhibit have tortoise shell temple tips. None of the glasses on Butaby's page have tortoise shell temple tips, including the product that defendant's representative is shown ordering. While this evidence could be considered support to conclude that Butaby is a counterfeiter, the court is skeptical of its provenance. Plaintiff's pattern of representing apparent inaccuracies is either the result of a series of mistakes or a lack of candor to the court. The court finds them troubling either way.

In summary, the court finds that a set of atypical circumstances rise to the extraordinary level required to grant relief to Butaby under Rule 60(b)(6). First, the record of service in this case is unusually bare. Second, the default judgment was entered before the six months required by Article 15 of the Hague Convention. Third, Butaby has made a showing that it has a meritorious defense to plaintiff's counterfeiting allegation. Fourth, the court's review of the record has caused it to be concerned about the accuracy and reliability of plaintiff's

12

representations to the court throughout the course of its litigation against Butaby. Taken together, these extraordinary circumstances constitute a "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Consequently, the court grants Butaby's motion to vacate the default judgment as to it.

## C. Preliminary Injunction

In addition to relief from the default judgment, Butaby also moves to modify the preliminary injunction that this court entered against it on October 8, 2024. The preliminary injunction froze the entirety of Butaby's funds on Amazon, approximately $200,000. Butaby asks the court to vacate or at least modify the injunction to reduce the asset freeze to its net income from sales of the allegedly infringing product. Butaby agrees that under the Lanham Act, it is the plaintiff's burden to establish the quantity of sales, and the defendant's burden to prove costs. See RNA Corp. v. Procter & Gamble Co., 747 F. Supp. 2d 1008, 1017 (N.D. Ill. 2010) (citing 15 U.S.C. § 1117(a)). Butaby has submitted an exhibit that it claims shows that the net income from sales of the allegedly infringing product, $17,652.95.[6] Butaby argues that $17,652.95 is the highest realistic assessment of damages that plaintiff could win, and thus the court should cap the preliminary injunction at that amount.

Plaintiff has two responses. First, plaintiff disputes that $17,652.95 is the highest realistic assessment of damages that plaintiff could win. Plaintiff argues that the Lanham Act allows for a statutory damage award of up to $2,000,000 per counterfeit mark if the trademark infringement is willful. Second, plaintiff argues that the evidence provided by Butaby is

---

[6] In the conclusion of Butaby's memorandum in support of its motion, the requested cap is $10,000. Given the repeated reference to the $17,652.96 figure, the court presumes that is the requested cap.

13

insufficient to prove its net proceeds from sales of the allegedly counterfeit goods.[7]

The court vacates the preliminary injunction against Butaby.  "[A]ny injunction issued by a court of equity is itself subject to later modification."  St John's United Church of Christ v. City of Chicago, 502 F.3d 616, 627 (7th Cir. 2007).  The evidence originally offered in support of the preliminary injunction is a subset of the evidence discussed in Part B, above.  For the reasons discussed above, plaintiff's evidence fails to demonstrate a likelihood of success on the merits or that plaintiff will suffer irreparable harm if the preliminary judgment is vacated.  See Cassell v. Snyder, 990 F.3d 539, 544-45 (7th Cir. 2021) (explaining that "[a]s a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied").  Thus, the record does not support the maintenance of the "extraordinary remedy" of a preliminary injunction against Butaby.  See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008).

**D. Sealed documents**

Finally, Butaby asks this court for leave to file its original exhibit in support of its motion to modify the preliminary injunction, and any future documentary evidence in support of such a motion, under seal.  Butaby argues that its Amazon financial details are a closely kept business secret in the online commerce industry.  Plaintiff opposes this motion, arguing that, "[d]efendant's assertion that this constitutes a 'closely guarded business secret' is merely for purposes of further delay and impeding Plaintiff's efforts to protect Celine's trademark and the public interest in accessing readily available information pertaining to the sale of counterfeit

---

[7] Surprisingly, the exhibit itself shows $4722.87 of net proceeds, not $17,652.95.

goods."

As an initial matter, the information that Butaby seeks to file under seal does not bear on the merits of the case; it is relevant only to a damages determination if Butaby is found liable for counterfeiting and the asset freeze in anticipation of such a determination. The court is comfortable that "the public interest in accessing readily available information pertaining to the sale of counterfeit goods" will be sufficiently protected. The actual amount of net proceeds that Butaby claims will not be sealed because it will appear in the public filing, as it already has. Thus, the public will have access to relevant information pertaining to the sale of counterfeit goods, if Butaby indeed sold counterfeit goods at all.

The court does not follow plaintiff's contention that filing such documents under seal will somehow delay the litigation or impede plaintiff's efforts to protect its trademark. Plaintiff will have access to the sealed documents. Whether the document is filed under seal will have no bearing on the speed of this litigation or plaintiff's ability to prosecute its case. As many courts in this circuit have held before, "documents containing sensitive pricing information, sales figures, sales dollar amounts, profit and loss data, and other financial records not normally made known to the public may be properly filed under seal." Formax Inc. v. Alkar–Rapidpak–MP Equip., Inc., No. 11–C–0298, 2013 WL 2452703, at *1 (E.D. Wis. June 5, 2013); see, e.g., Marine Travelift, Inc. v. Marine Lift Systems, Inc., No. 10-C-1046, 2013 WL 4087555, at *1 (E.D. Wis. 2013) (explaining that "[s]ensitive financial information may be considered a trade secret, constituting good cause for maintaining the information under seal) ; FTC v. OSF Healthcare Sys., No. 11 C 50344, 2012 WL 1144620, at *4 (N.D. Ill. Apr. 5, 2012) (finding that documents containing defendants' "pricing information…qualify as confidential commercial information and trade secrets"); Metavante Corp. v. Emigrant Sav. Bank, No. 05-CV-1221, 2008

15

WL 4722336, at*9 (E.D. Wis. Oct. 24, 2008) (finding that "nonpublic financial information relating to account balances….warrant[s] the sealing of these documents"). The only delay the court sees here is the time that plaintiff is wasting in contesting this issue. Consequently, the court grants Butaby's motion for leave to file supplemental documentary evidence under seal, including Document 55, which has already been filed under seal.

## CONCLUSION

For the above reasons, the court grants Butaby's motion to vacate the default judgment as to it. (Doc. 44). The court vacates the preliminary injunction against Butaby. The court grants Butaby's motion to file Doc. 55 under seal and leave to file supplemental documentary evidence under seal. (Doc. 47). The parties are directed to file a joint status report using this court's form no later than April 2, 2025.

ENTER:

Robert W. Gettleman
United States District Judge

DATE:

16